KIRK T. KENNEDY, ESQ.
Nevada Bar No: 5032
815 S. Casino Center Blvd.
Las Vegas, NV 89101
(702) 385-5534
email: ktkennedylaw@gmail.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EILEEN GOLDMAN, | 2:20-cv-00613-APG-EJY |
| Plaintiff, | |
| vs. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, a foreign corporation; SCOTTSDALE INDEMNITY COMPANY, a foreign corporation; | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS FEES**

COMES NOW, the Plaintiff, EILEEN GOLDMAN, by and through her undersigned counsel, KIRK T. KENNEDY, ESQ., who files this opposition to the Defendants' motion for an award of attorney's fees.

In support hereof, Plaintiff relies on the following points and authorities and all pleadings on file herein.

Dated this 20th day of November, 2020.

/s/Kirk T. Kennedy
KIRK T. KENNEDY, ESQ.
Nevada Bar No: 5032
815 S. Casino Center Blvd.
Las Vegas, NV 89101
(702) 385-5534
Attorney for Plaintiff

1

## POINTS AND AUTHORITIES

Plaintiff Goldman's lawsuit, although couched with causes of action related to breach of insurance contract and breach of the good faith covenant, was factually premised upon the allegations that the Defendants, through its agents, participated in the retaliatory discharge of Goldman from her employer on October 22, 2019, in violation of Title VII, 42 U.S.C. Section 2000 et seq.

It is undisputed that the Defendant provided insurance coverage to the insured Newage Lake Las Vegas, the Plaintiff's employer, related to Goldman's claims of age based and religious based discrimination in violation of the ADEA and Title VII. Goldman's claims in this matter were predicated upon the allegation that the Defendants, through its assigned adjuster and counsel, unlawfully participated in the decision to fire Plaintiff Goldman only one day prior to her scheduled arbitration hearing in the AAA matter of Goldman v. Newage Lake Las Vegas.

Goldman's unlawful termination resulted in the amendment of her claims in the AAA proceeding to include a new federal claim for unlawful retaliation in violation of Title VII and the ADEA. It is undisputed that following the conclusion of the AAA proceedings, the arbitrator found in favor of Goldman on her claims of unlawful retaliation in violation of federal law and awarded her damages based on that federal violation. The Defendant Insurer has already paid out that award to Goldman on behalf of its insured, Newage.

Goldman's lawsuit filed against Defendant Scottsdale Indemnity and Nationwide Mutual Insurance Company was predicated upon the Defendants' alleged involvement in the unlawful retaliation. Goldman's Amended Complaint factually alleged:

"6. Plaintiff Goldman was an employee of Newage Lake Las Vegas, LLC, hereinafter referred to as Newage, from 2016 to October 22, 2019, wherein she was employed as a national sales manager.

7. In 2018, Plaintiff commenced legal action against Newage related to claims of age discrimination and religious discrimination, which are federally protected claims and

2

statutory rights.

8.  In 2019, Plaintiff's discrimination claims resulted in the filing of an arbitration proceeding against her employer with the American Arbitration Association, said arbitration proceeding resulting in a three day arbitration hearing from February 5, 2020 to February 7, 2020.

9.  At all times relevant herein, Newage was insured by a policy of commercial liability insurance with the Defendants, Nationwide Insurance Company and Scottsdale Indemnity Company, under policy number EKI3253633, said policy of insurance providing insurance coverage and benefits related to Plaintiff's discrimination claims against the insured company, Newage.

10.  Pursuant to the express terms of the subject policy of insurance between Defendants and Newage the policy states that it provides coverage to the company, as well as, all employees, which included Plaintiff Goldman.

11.  The subject policy of insurance, by its express terms, provides coverage to all employees and former employees of Newage related to conduct and events which occurred in the course and scope of said employment, which therefore includes coverage for Plaintiff Goldman during the time period of her employment for Newage.

12.  Plaintiff's arbitration proceeding against Newage was previously scheduled for hearing on October 23, 2019, before the American Arbitration Association.

*13. On October 22, 2019, Plaintiff was at work with her employer, Newage, when a decision was made to terminate her employment over unfounded allegations, said decision being made by managerial staff with Newage, as well as with input, direction and control from agents of the Defendants.*

*14. Plaintiff is informed and believes that Defendants were advised and informed of the subject termination decision of Plaintiff's employment with Newage and, further, that Defendants participated, directly or indirectly, in the overall decision to terminate Plaintiff's employment with Newage one day before the previously scheduled arbitration proceeding referenced herein.*

*15. Defendants' participation, agreement and involvement in the termination decision*

3

*of Plaintiff's employment with Newage, while the Plaintiff had pending arbitration proceedings against Newage that the Defendants were tendering a defense on behalf of, was a bad faith breach of the legal obligations owed by Defendants to Plaintiff as a covered party under the terms and language of the policy of insurance provided by Defendants to Newage..*" Amended Complaint, ECF 9; (Emphasis added).

As alleged in the Amended Complaint, Goldman set forth factual allegations that the Defendant participated in bad faith in the unlawful termination decision by Newage to fire Plaintiff one day prior to her scheduled arbitration hearing in October, 2019. While the instant matter set forth claims for the bad faith breach of insurance coverage by the Defendants, it is clear that the underlying premise was the Defendants' alleged involvement in the unlawful discharge and retaliation against Goldman, which violates Title VII and the Age Discrimination in Employment Act.

**A. Court's Hearing On October 26, 2020**:

At the court's video conference hearing on October 26, 2020, the district court heard arguments regarding the Defendants' motion to dismiss the complaint, as well as the related matters of the Plaintiff's motion for leave to file her second amended complaint. At the hearing, the Court found as follows:

1. Defendants Scottsdale Indemnity/Nationwide "does not owe her (Goldman) any duty under the policy in connection with this dispute." **Exh. 1, Transcript of Hearing, 10/26/20, pg. 13.**

2. The Court found that Goldman is not an intended third-party beneficiary of the policy at issue; Id., pg. 13, lines 11-13;

3. The Court also held that there was no intent stated in the policy to benefit Plaintiff Goldman as a party bringing a claim against her employer; Id., lines 17-25.

4. The Court stated that Goldman could not support her claims as a third-party beneficiary under the policy. Id.

5. The Court did state that perhaps Goldman could bring other state tort claims, such as for interference with contractual relations or civil conspiracy; Id., pg. 14, lines 1-12. The Court noted that Goldman could bring these additional claims in a separate action. Id.

4

6. The Court did grant the Defendant's motion to dismiss the pending claims of Goldman with prejudice. Id., pg. 14, lines 17-23.

Importantly, the Court's Order made no finding or ruling that Goldman's overall claims were frivolous, unreasonable or without foundation.

**B. The Foundation for Goldman's Suit is Predicated Upon a Title VII Unlawful Retaliation Claim:**

In Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), the United States Supreme Court held that, in civil rights cases, an award of attorney's fees to a prevailing defendant may be appropriate if the plaintiff's action is frivolous, unreasonable, or without legal foundation. The Court found that this standard should be strictly applied so as to not undercut Congress' policy of promoting vigorous prosecution of civil rights violations. Id., at 422.

The Ninth Circuit has also held that in awarding attorney's fees against a Title VII plaintiff, the court should consider the financial resources of the plaintiff in awarding any fees to a prevailing defendant. Miller v. Los Angeles County Board of Education, 827 F.2d 617, 621 (9th Cir. 1987). The Ninth Circuit has stated that "an award of fees should not subject a plaintiff to financial ruin." Id.

In Harris v. Maricopa County Superior Court, 631 F.3d 963 (9th Cir. 2011), the Court held the following:

"Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the "highest priority," requires that private individuals bring their civil rights grievances to court. . Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes. Guaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as the means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior." Id., at 971.

5

Harris further held that:

"*In accordance with this objective, courts are permitted to award attorneys fees to prevailing plaintiffs as a matter of course, but are permitted to award attorneys fees to prevailing defendants. . . only in exceptional circumstances.*" Id. (Emphasis added).

In this case, Goldman filed suit against the insurance company Defendants for their alleged participation in her unlawful termination from employment, which violated both Title VII and the ADEA. See Amended Complaint, ECF 9, paragraphs 14-15. While her claims specifically against the Defendant insurers were couched as insurance bad faith/contract claims, the underlying factual predicate was clearly premised upon the Defendants' involvement in the federal violation of unlawful retaliation. It is undisputed by the parties that the retaliation claim was sustained in the AAA proceedings between Goldman and her employer Newage, however, the role and participation of the Defendant insurer was not addressed in those arbitration proceedings.

While this Court has denied Goldman the ability to move forward with her suit, this case is not an "exceptional circumstance" which warrants an award of fees for the asset rich insurance company Defendant against a 71 year old unemployed woman on Social Security benefits. **Exh. 2, Declaration of Eileen Goldman.**

In this matter, there is no support under Christiansburg or Harris to find that Goldman's claims were specifically frivolous, unreasonable or without legal foundation to support any award of attorney's fees for the Defendants. To award any fees would unfairly punish Goldman for exercising her rights to redress grievances in a court forum, as so eloquently stated in the Harris decision, supra. Further, this Court's order granting the motion to dismiss made no specific finding that her claims were frivolous, unreasonable or without legal foundation. **See Exh. 1, pg. 14-15.**

**C. The Defendants' Claimed Attorneys Fees Are Grossly Unreasonable And Patently Excessive:**

The district court may make an allowance for attorney fees based on the application of N.R.S. 18.010(2)(a), however, the making of such an award is *discretionary* with the court. *Schulz v. Lamb*, 591 F.2d 1268, 1272 (9th Cir. 1978).

Once a party establishes its entitlement to attorney fees, the district court must determine the reasonableness of the contemplated award of fees in federal court. The Ninth Circuit has held that a reasonable attorney fee is based on a lodestar calculation by first determining the number of hours reasonably expended multiplied by a reasonable hourly rate for the attorney's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see also, Nadler v. United Automobile Insurance Company*; 2:09-cv-1348-RCJ-GWF, (D. Nev. 2014) (regarding a federal court's assessment of a request for attorneys fees and the loadstar requirements related to a diversity action). A court may then determine whether to adjust the lodestar fee calculation based on the evaluation of the twelve factors stated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not already been subsumed in the lodestar calculation.

The twelve factors for consideration under *Kerr*, include:
(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances;(8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. Id. at 70.

Once a loadstar fee is calculated, the loadstar amount is presumptively reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987). A court has the authority to adjust the lodestar figure based on its

analysis of the *Kerr* factors. *Fischer* at 1119.  As part of this analysis, the district court has the authority to exclude from the fee calculation those hours that were not reasonably expended. *Hensely*, at 433-34; see also *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir. 1992) ("The district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application.").

In *Vogel v. Harbar Plaza Center, LLC*, 893 F.3d 1152, 1160-61 (9th Cir. 2018), the Court addressed the district court's obligations to determine "reasonableness" in ascertaining a loadstar attorney fee number. The Court stated:

"In calculating the lodestar, district courts have a duty to ensure that claims for attorneys' fees are reasonable. . . and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours worked, *Gates v. Deukmejian*, 987 F.2d 1392, 1398-99 (9th Cir. 1993), Rather, a district court must "ensure that the winning attorneys have exercised "billing judgment." *Case v. Unified School District No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). In a contested case, a district court ordinarily can rely on the losing party to aid the court in its duty by vigorously disputing any seemingly excessive fee requests." *Vogel* at 1160-61.

Plaintiff "vigorously" disputes the reasonableness of the Defendants' attorney fee request, given the excessive amounts billed in this matter.

The Defendants' motion for attorney fees relies mainly upon the affidavit of Sabrina Haurin, Esq., with the firm of Bailey Cavalieri, LLC.  ECF 37-1.  Ms. Haurin's affidavit, with supporting billing records, attempts to support the shockingly excessive billing sum of $36,544 for the few pleadings that were filed in this matter.  A close review of those billing records reveals multiple instances of excessive and unnecessary over billing which should not be sanctioned by this Court.

The Haurin Affidavit records detail multiple billings from several attorneys with the Bailey Cavalieri firm, including Counsels Christopher Burch, Darius Kandawalla, Evan Ecos and Ms. Haurin, as well. The excessive billing can be broken down in groups related to separate projects billed by that Firm.

8

**1. Billing work on Motion to Dismiss the Amended Complaint, ECF 10, filed 5/18/20:**

The Defendants' work on the motion to dismiss reveals the following excerpted billing:

a.  4/9/20 C. Burch (CB1) billed 5.5 hours to research and draft the motion to dismiss;

b.  4/10/20 CB1 billed 2.9 hours on the his research and draft of the motion to dismiss;

c.  4/27/20 Ms. Haurin (SCH) billed 2.0 hours on the motion to dismiss;

d.  4/29/20 SCH billed 3.7 hours on the motion to dismiss;

e.  4/30/20 SCH billed 3.3 hours on the motion to dismiss;

d.  4/30/20 SCH billed 1.7 hours on the motion to dismiss;

e.  4/30/20 Ms. Ecos (ECE) billed 2.4 hours on the motion to dismiss;

f.  5/11/20 SCH billed 4.7 hours on the motion to dismiss;

g.  5/14/20 Mr. Kandawalla (DNK) billed 1.1 hours on the motion to dismiss; ECF 37-1.

The billing rates charged by the Defendants' firm vary with each attorney:

1. CB1 bills at $280 per hour
2. SBH bills at $310 per hour (later after 7/1/20 that increased to $350 an hour)
3. DNK bills at $400 per hour
4. ECE bills at $215 per hour; ECF 37-1, Affidavit of Haurin.

Thus, for the single motion to dismiss, the fees charged were:

1. CB1- 8.4 hours @ $280 = $2,352
2. SCH- 15.4 hours @ $310 = $4,774
3. ECE- 2.4 hours @ $215 = $516
4. DNK- 1.1 hours @ $400 = $440

A total of 27.3 hours billed at $8,082 for a single Rule 12b motion.

On the Defendants' filed ten page motion to dismiss, the Bailey Cavalieri firm billed 27.3 hours. This billing was at different rates for each of the *four* different attorneys who had a hand in billing for the single motion. Notably, the Defendants' motion contains five pages of legal arguments in support of their position. While the quantity of pages of legal argument is not dispositive, it is clearly excessive to spend over 27 hours and over $8,000 between four attorneys for one pleading. This excessive

billing should not be a permissible basis for recovery of fees.

**2. Billing work on Defendants' reply to motion to dismiss, ECF 14 and Defendants' opposition to Plaintiff's motion for leave to amend, ECF 16:**

a. 5/27/20 SCH billed 1.5 hours on reply to motion to dismiss;

b. 6/1/20 DNK billed 2.2 hours on the reply to motion to dismiss;

c. 6/4/20 CB1 billed 2.2. hours on research for opposition to motion for leave to amend;

d. 6/4/20 CB1 billed 3.4 hours on research for opposition to motion for leave to amend;

e. 6/5/20 CB1 billed 3.1 hours on the draft of opposition to motion for leave to amend;

f. 6/8/20 CB1 billed 1.5 hours on the draft of the opposition to motion for leave to amend;

g. 6/11/20 DNK billed 2.7 hours on reviewing and revising the draft opposition to the motion for leave to amend;

h. 6/15/20 CB1 billed 3.3. hours on the draft of the opposition to the motion for leave to amend;

i. 6/15/20 CB1 billed 1.8 hours on the same draft opposition;

j. 6/17/20 CB1 billed 3.2 hours on the draft of the opposition to the motion for leave to amend; ECF 37-1.

Based on the foregoing, the Bailey Cavalieri firm billed as follows:

1. 3.7 hours on the reply to the motion to dismiss, ECF 14, filed 6/2/20

2. 21.2 hours on the opposition to Plaintiff's motion for leave to amend, ECF 16, filed on 6/17/20

On the Defendants' Opposition, ECF 16, the Defendants' billing breakdown includes:

1. CB1 billed 18.5 hours at $280 = $5,180

2. DNK billed 2.7 hours at $400 = $1,080.

The Defendants were billed 21.2 hours and over $6,200 for their seven page opposition, ECF 16. Again, another example of excessive and unreasonable billing by the Defendants' Firm.

**3. Billing Re: Rule 26(f) Production:**

As part of the discovery disclosure process, the Defendants prepared and served their Rule 26(a) (1) initial disclosures to the Plaintiff on July 15, 2020. **Exhibit 3, Defendants' Rule 26(a)(1) Disclosures**. Noticeably absent from the four page disclosure document were any, actual document disclosures. Id. The Defendants produced and provided nothing to the Plaintiff. Not a single document was provided to the Plaintiff. Yet, this did not stop more excessive billing from the Defendants' Firm:

a.  7/7/20 CB1 billed 2.7 hours to review documents for disclosures;

b.  7/7/20 CB1 billed another 3.6 hours drafting/revising disclosures;

c.  7/9/20 CB1 billed 2.9 hours for more work on the disclosures;

d.  7/10/20 SCH billed 1.6 hours drafting and revising disclosures;

e.  7/13/20 CB1 billed 1.3 hours for more work on drafting and revising the disclosures, ECF 37-1.

The Defendants' Firm billed 12.1 hours to draft disclosures that were never served on the Plaintiff. The Plaintiff only received the attached disclosure pleading which provided nothing of substance and no documents at all from the Defendants.

CB1 billed 10.5 hours @ $280 = $2,940

SCH billed 1.6 hours @ $350 = $560

As before, the Defendants' Firm billed an excessive 12.1 hours to prepare document production, which only resulted in a four page initial document disclosure served on the Plaintiff, with no documents attached or served at all.

**4. Billed work on the Defendant's Response to Plaintiff's Objections to the Report & Recommendation, ECF 30:**

Following the filing of the Magistrate's report and recommendation to deny Plaintiff's motion for leave to amend her complaint, the Plaintiff filed her timely objections to the Report on August 19, 2020, ECF 29. The Defendants' response to the objections was filed on September 2, 2020, ECF 30, and resulted in more, excessive billing:

a. 8/25/20 CB1 billed 2.4 hours for the response to the objections;

b. 8/28/20 CB1 billed 1.9 hours for the response to the objections;

c. 8/28/20 CB1 billed 1.5 hours for the response to the objections;

d. 8/31/20 CB1 billed 2.9 hours for the response to the objections;

e. 9/1/20 CB1 billed 2.5 hours for the response to the objections;

f. 9/2/20 DNK billed 1.7 hours for revisions to the response;

g. 9/2/20 CB1 billed 1.4 hours for the response to the objections;

    A total of 14.3 hours was spent on the Defendants' ten page response to the Plaintiff's objections to the Report & Recommendation, ECF 30. This pleading included:

    CB1 billing 12.6 hours @ $280 = $3,528

    DNK billing 1.7 hours @ $400 = $680

    The Defendants' Firm billed over $4,200 for 14.3 hours of work on their filed response. Another repetitive example of excessive billing in this case.

**5. Billed work for unnecessary Discovery Requests:**

    Ten days before the final hearing on the pending motions scheduled for October 26, 2020, the Defendants' Firm billed for interrogatories and requests for production to the Plaintiff, which were ultimately unnecessary.

a. 10/16/20 CB1 billed 3.9 hours to draft requests for production and interrogatories;

b. 10/19/20 SCH billed 1.9 hours for more work on the requests for production and interrogatories; ECF 37-1.

    The Defendants' Firm billed 5.8 hours to draft boiler plate requests for production and interrogatories to serve on the Plaintiff. The requests consisted of a scant 14 requests for production and 16 separate interrogatories.

    CB1 billed 3.9 hours @ $280 = $1,092

    SCH billed 1.9 hours @ $350 = $665

    The Defendants seek over $1,700 for drafting essentially form requests for production and interrogatories that were mailed to the Plaintiff, but mooted by this Court's decision on October 26, 2020.

**6. Billing for Oral Argument Preparations:**

In preparation for the October 26, 2020, argument hearing by video conference on the pending motions, the Defendants' Firm billed the following:

a. 10/23/20 SCH billed 5.5 hours for oral argument preparations;

b. 10/26/20 SCH billed 3.7 hours for oral argument preparations;

c. 10/26/20 SCH billed .5 hours for the actual oral argument hearing, ECF 37-1.

SCH billed 9.2 hours @ $350= $3,220 to prepare for the relatively short video conference hearing.

The foregoing dissection of the billing submitted by the Bailey Cavalieri firm reveals multiple instances of gross over billing and cumulative billing for the same projects. In assessing the loadstar calculation, as argued above, the district court has the authority to exclude from the fee calculation those hours that were not reasonably expended. *Hensely*, at 433-34. It is clear from the Defendants' own evidence, that multiple opportunities were taken to excessively and unnecessarily bill legal fees in a flagrant manner, which ran up the bill to over $36,000.

The Plaintiff's case was denied the opportunity to proceed by this Court's final order, however, it is patently unreasonable and contrary to Ninth Circuit standards to reward the Defendants over $36,000 for their exorbitant and unreasonable fees. All of these fees were charged before discovery actually commenced in earnest between the parties. The Defendants' fee request requires more than just "trimming the fat," rather this Court should not reward the Defendant insurance company, who has vast monetary assets, the sanction of attorneys fees against the 71 year old Plaintiff Goldman based on an unreasonable fee request.

This Court should exercise its discretion to deny *any* fees to the Defendants based on the documented pattern of excessive billing in this matter, especially when balanced with the fact that the Court's final order did not find that Goldman's claims were unreasonable, frivolous or without legal foundation.

For all the foregoing reasons, the Defendants' motion for attorney's fees should be denied.

Dated this 20th day of November, 2020.

/s/Kirk T. Kennedy
KIRK T. KENNEDY, ESQ.
Nevada Bar No: 5032
815 S. Casino Center Blvd.
Las Vegas, NV 89101
(702) 385-5534
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby affirm that on this 20th day of November, 2020, I mailed via first class U.S. Mail and served via the ECF System a copy of the foregoing to the Defendant at the address below:

Riley A. Clayton, Esq.
Hall Jaffe & Clayton
7425 Peak Drive
Las Vegas, NV 89128

Sabrina Haurin, Esq.
Bailey Cavalieri LLC
10 West Broad St., Ste. 2100
Columbus, OH 43215-3422

/s/Kirk T. Kennedy
Law Office of Kirk T. Kennedy, Esq.